IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DAVID L. LEWIS, PH.D.; R.A. McELMURRAY, III; and G. WILLIAM BOYCE, | * * * * | |
| Plaintiffs, | * | |
| vs. | * | CASE NO. 3:06-CV-16(CDL) |
| JOHN WALKER, PH.D.; JULIA W. GASKIN; ROBERT B. BROBST; WILLIAM P. MILLER, PH.D.; E. WILLIAM TOLLNER, PH.D; L. MARK RISSE, PH.D.; THE BOARD OF REGENTS OF THE UNIVERSITY OF GEORGIA; THE UNIVERSITY OF GEORGIA RESEARCH FOUNDATION, INC.; and JOHN DOE(S), | * * * * * | |
| Defendants. | * | |

O R D E R

Relators David L. Lewis, Ph.D., R. A. McElmurray, and G. William Boyce filed the above-captioned *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3731. Relators allege that Defendants violated the FCA by submitting false or fraudulent grant applications in order to receive federal funds to support their environmental research projects. Presently pending before the Court are: (1) Board of Regents' Motion to Dismiss (Doc. 21); (2) Defendant University of Georgia Research Foundation's Joinder in and Adoption of Defendant Board of Regents' Motion to Dismiss and Brief in Support of Board of Regents' Motion to Dismiss (Doc. 22); (3) Motion to Dismiss by Defendants Gaskin, Miller, Tollner, and Risse (Doc. 23); and (4) Motion to Dismiss by Defendants John Walker Ph.D. and Robert B.

Brobst (Doc. 41).[1]  Defendants seek dismissal of Relators' Complaint based upon failure to state a claim upon which relief can be granted, lack of subject matter jurisdiction, and failure to plead with sufficient particularity.  *See* Fed. R. Civ. P. 12(b)(6), 12(b)(1), and 9(b).  For the following reasons, the Court grants the motions to dismiss as to the Board and the Foundation, but denies the motions with respect to each of the remaining Defendants.

BACKGROUND

The present action is the latest in a series of lawsuits involving Relators McElmurray and Boyce and the application of treated sewage sludge to their Georgia farmlands.  In 1998 and 2001, respectively, Relators McElmurray and Boyce sued the City of Augusta, alleging that sewage sludge they received from the Messerly Wastewater Treatment Plant ("MWTP") contained hazardous concentrations of chemical wastes that contaminated forage crops and poisoned their dairy cattle.[2]  (Compl. ¶¶ 19, 45, 46.)  The lawsuits threatened to discredit this particular method of waste disposal as safe and effective.  Relators assert that the lawsuits also threatened to discredit Defendants, whose reputations and financial interests "were substantially tied to promoting land application of sewage sludge . . . ."  (*Id.* at ¶ 83.)

---

[1] For ease of reference, the Court will refer to the Board of Regents as "the Board" and the University of Georgia Research Foundation as "the Foundation."

[2] Relator Lewis was an EPA research microbiologist who worked at UGA from December 1998 to November 2002.  In December 1998, Relator Lewis began "investigating adverse health complaints reported by individuals exposed to sewage sludge produced by the City of Augusta[.]"  (Compl. ¶ 69.)  When he completed his research in December 2004, Relator Lewis concluded that hazardous materials in sewage sludge impair the immune systems of chronically exposed humans and animals.  (*Id.* at ¶¶ 79-80.)

**I. The Risse Project**

In November 1998, Defendants met to discuss the possibility of initiating a research project "to provide EPA with technical information that the Defendants could use to discredit the lawsuits filed by . . . Relators McElmurray and Boyce[.]" (*Id.* at ¶ 21.) Defendant Walker was EPA's national spokesperson for promoting land application of sewage sludge. He contacted Defendant Brobst, the EPA employee in charge of investigating the Augusta allegations, and Defendants Gaskin, Miller, Risse, and Tollner, a group of University of Georgia professors and research scientists. On June 15, 1999, Defendants Gaskin, Miller, and Risse submitted a Small Grant Application Kit ("the Application") requesting EPA funding for "the Risse project."[3] Specific statements in the Application claimed that:

(1) "the Risse project would not directly benefit EPA, and that EPA did not solicit the work[]";

(2) "Defendant Risse was the Principal Investigator and . . . was uniquely qualified to do the work[]"; and

(3) "the duration of the project was too short for [Quality Assurance/Quality Control ("QA/QC")] measures to be necessary[,] . . . [and] no forage samples would be collected under drought conditions[.]"

---

[3] Defendant Tollner did not become involved with the Risse project until after his colleagues submitted the Application.

3

(*Id.* at ¶ 29, 30, 31 (footnotes omitted).) Relators allege that each of these statements is false, and therefore contend that the Application violates the FCA.

The Federal Grants and Cooperative Agreement Act of 1977 ("FGCA"), 31 U.S.C. §§ 6301-6308, governs the use and assignment of federal funds. Under the FGCA, a federal agency may enter into a grant agreement if "(1) the principal purpose of the relationship is to transfer a thing of value . . . to carry out a public purpose . . . and (2) substantial involvement is not expected between the [] agency and the . . . recipient . . . ." *Id.* at § 6304. Relators allege that the Application violated the FGCA "[b]ecause Defendants Walker and Brobst solicited the Risse project to directly benefit EPA's . . . investigations concerning allegations made in the lawsuits filed by . . . Relators McElmurray and Boyce[.]" (Compl. ¶ 29.) Relators likewise contend that (1) "Defendant Risse had little, if anything, to do with the actual work, and the project involved routine environmental sampling and chemical analyses," and (2) Defendants submitted the Application "several weeks after they were already collecting samples that were obtained during the severe drought, . . . [and] never amend[ed] . . . their QA/QC commitments and/or requirements." (*Id.* at ¶¶ 30, 31.) Finally, Relators contend that Defendants Miller, Gaskin, Walker, and Brobst failed to disclose personal conflicts of interest as required by the FGCA. (*Id.* at ¶ 32.) Thus, according to Relators, Defendants violated the FCA by presenting a false or fraudulent grant application for the purpose of obtaining research money from EPA. *See* 31 U.S.C. § 3729(a).

4

## II. The Gaskin Paper

EPA ultimately approved the grant and Defendants commenced the Risse project. On December 19, 2001, Defendants submitted "the Gaskin paper," a paper outlining their research, for publication in the *Journal of Environmental Quality*.[4] In addition to outlining the results of the Risse project, the Gaskin paper presented Defendants' conclusions that Augusta's land application program complied with federal and state environmental laws and was a safe and effective method for disposing of sewage sludge. Relators dispute these conclusions and assert that Defendants "knew that . . . all of their data[] . . . were unreliable, false, or fabricated[,]" and that "all of the conclusions in the Gaskin paper, which were based on these knowingly false, fabricated and misleading scientific data, were also false and/or misleading." (Compl. ¶ 36 (footnote omitted).) Relators allege that "Defendants have submitted approximately nine additional applications for federal assistance, using false or fabricated data from the Risse Project and [the] Gaskin paper." (*Id.* at ¶¶ 64, 86.) Relators also contend that the Board and the Foundation are vicariously liable for the false statements made by the individual Defendants. *See Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983) ("We have held that in cases brought under the False Claim Act that the knowledge of an employee is imputed to the corporation when the employee acts for the benefit of the corporation and within the scope of his employment.") (footnote and internal citations omitted).

---

[4] Defendants Gaskin, Brobst, Miller, and Tollner are the listed co-authors of the Gaskin paper. (*See* Compl. ¶ 37 n.30.)

5

## STANDARD FOR MOTION TO DISMISS

Defendants seek dismissal of this action based upon lack of subject matter jurisdiction, Relators' failure to state a claim for which relief can be granted, and failure to plead the FCA claims with particularity as required by Rule 9(b). *See* Fed. R. Civ. P. 12(b)(1), 12(b)(6), 9(b). Since Defendants' jurisdictional challenge is a facial one, the Court reviews the Complaint to "see if [Relators have] sufficiently alleged a basis of subject matter jurisdiction, [taking] the allegations in [the] complaint [] as true for the purposes of the motion." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (internal quotation marks and citations omitted). Similarly, in evaluating Defendants' contention that Relators' have failed to state a claim upon which relief may be granted, the Court's analysis "is limited primarily to the face of the complaint and attachments thereto." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997). The Court must "constru[e] the complaint in the light most favorable to the plaintiff and accept[] as true all facts which the plaintiff alleges." *Day v. Taylor*, 400 F.3d 1272, 1275 (11th Cir. 2005). "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'" *Watts v. Fla. Int'l Univ.*, __ F.3d __, 2007 WL 2331029 at *5 (11th Cir. Aug. 17, 2007) (*citing Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007)). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level" and "to raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claim or claims. *Id.* (internal quotation marks and citations omitted). Finally, to determine whether Relators have alleged their claims with sufficient

particularity under Rule 9(b), the Court must evaluate whether the Complaint presents "facts as to time, place, and substance of the defendant's alleged fraud, and the details of the defendant['s] allegedly fraudulent act, when they occurred, and who engaged in them."  *Corsello*, 428 F.3d at 1012 (internal quotation marks and citations omitted).

## DISCUSSION

The FCA imposes civil liability upon "[a]ny person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval[.]"  31 U.S.C. § 3729(a)(1).  Each Defendant contends that Relators have failed to state a claim under the FCA and that this Court lacks subject matter jurisdiction because Relators are not "original sources" of the publicly disclosed information upon which their allegations depend.  Each Defendant also maintains that Relators' claims are barred by the applicable statute of limitations and that Relators' claims should be dismissed because they are not plead with sufficient particularity.  In addition to these common defenses, the Board and the Foundation argue that they are not covered by the FCA and that they cannot be held vicariously liable for the acts of the individual Defendants.  Finally, Defendants Walker and Brobst seek dismissal based upon qualified immunity.  The Court will first address the defenses common to all Defendants and then will discuss the individual defenses of the Board, the Foundation, Walker and Brobst.

7

**I. Common Defenses**

    A.   Subject Matter Jurisdiction

Section 3730(e)(A) of the FCA provides that "[n]o court shall have jurisdiction over [a civil action filed under the FCA] based upon the public disclosure of allegations or transactions . . . unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A); *see also Rockwell Int'l Corp. v. United States*, __ U.S. __, 127 S. Ct. 1397, 1401 (2007) (noting that 31 U.S.C. § 3730(e)(4)(A) creates a jurisdictional bar). The FCA defines an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B). To determine whether jurisdiction exists, the Court conducts a three-part inquiry: "(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is the plaintiff an 'original source' of that information." *Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 n.4 (11th Cir. 1994); *Battle ex rel. v. Bd. of Regents*, 468 F.3d 755, 762 (11th Cir. 2006).

Defendants assert that the jurisdictional bar applies to this case because Relators' allegations were publicly disclosed prior to this action, and Relators are not original sources of the disclosed information. Since this case is at the motion to dismiss stage and the jurisdictional challenge is a facial one, the Court must examine Relators' Complaint to determine whether they allege sufficient facts to overcome the jurisdictional bar. The essence of Relators' FCA claim is that Defendants "knowingly caused to be submitted

approximately 10 grant applications, whereby they would obtain federal funds, by the use of false or fabricated data." (Compl. ¶ 86.) Specifically, Relators allege that Defendants violated the FCA because they submitted grant applications for federal funds that were based on research Defendants knew to be false and fraudulent. Defendants contend that "all of the Relators' allegations are contained in publicly disclosed documents[, and that] Relators simply gathered this publicly disclosed information and filed a *qui tam* complaint." (Mot. to Dismiss by Defs. Gaskin, Miller, Tollner, and Risse 11; *see also* Br. in Supp. of Mot. to Dismiss by Defs. John Walker Ph.D. and Robert B. Brobst 7-12; Br. in Supp. of Bd. of Regents' Mot. to Dismiss 10.)

Defendants correctly point out that many of the documents to which Relators cite were part of the public domain prior to their filing this lawsuit. However, the face of the Complaint makes clear that Relators cite to these documents in order to support the factual allegation that land application is *not* a safe and effective means of disposing of sewage sludge. In other words, Relators use the publicly disclosed documents to *factually* discredit Defendants' research and allege that Defendants' conclusions were wrong. This, however, is not the "allegation" Relators assert against Defendants. Relators do not allege that Defendants violated the FCA because their research was wrong. Instead, Relators maintain that Defendants violated the FCA because they *knowingly* based their research on false and fraudulent data and *knowingly* used that data to support their claims for federal research funds. *See* 31 U.S.C. § 3829(a)(1) (imposing civil liability only where a person "*knowingly* presents, or causes to be presented, . . . a false or fraudulent claim for payment or approval[.]") (emphasis added). Without such knowledge of falsity, Defendants'

9

conduct does not violate the FCA, and the publicly disclosed information does not even suggest that Defendants *knew* their research was false. In order to support the allegations relating to Defendants' knowledge of falsity, Relators primarily rely upon correspondence sent to, from, and among Defendants. Defendants have not argued that this correspondence was publicly disclosed, and such is not apparent from the face of the Complaint. The jurisdictional bar only applies to FCA actions "based upon the public disclosure of allegations or transactions . . . ." 31 U.S.C. § 3730(e)(4)(A). The Complaint demonstrates that the alleged FCA violations are *not* "based upon [] public disclosure[,]" but upon Defendants' private correspondence. Accordingly, at this stage in the litigation, the Court finds that the jurisdictional bar does not apply and denies Defendants' motion to dismiss for lack of subject matter jurisdiction.

B.   Statute of Limitations

Defendants also contend that Relators failed to file this action within the applicable limitations period. The FCA contains its own limitations provision, which reads:

> A civil action . . . may not be brought—(1) more than 6 years after the date on which the violation . . . is committed, or (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances[.]

31 U.S.C. § 3731(b). Since Defendants filed the first allegedly false grant application in June 1999, and since each of the alleged subsequent violations stem from this initial filing, Relators acknowledge that the February 17, 2006 filing date places their claims outside the six-year limitations period. Relators contend, however, that the Complaint is still timely under the tolling provision in

10

subsection (b)(2). Specifically, Relators argue that: (1) the United States Department of Justice ("USDOJ") is "the [agency] of the United States charged with responsibility to act"; (2) the USDOJ did not know of the "facts material to the right of action" until Relators provided that information; and (3) Relators did not acquire the information regarding Defendants' false claims until late-2004. Thus, according to Relators, the FCA tolling provision extended their time to file by an additional three years beginning in late-2004.

Although the Eleventh Circuit has not yet addressed the issue, there is a conflict among federal courts as to whether, and how, the FCA tolling provision applies to *qui tam* actions. The handful of courts to have addressed this issue are divided into three different schools of thought. The first interpretation is that the reference to an "official of the United States" is a literal requirement of the tolling provision such that the provision does not apply to a *qui tam* action unless the government intervenes as an actual participant in the lawsuit. *See*, *e.g.*, *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 725 (10th Cir. 2006); *United States ex rel. Thistlewaite v. Dowty Woodville Polymer, Ltd.*, 6 F. Supp. 2d 263, __ (S.D.N.Y. 1998); *United States ex rel. El Amin v. George Washington University*, 26 F. Supp. 2d 162, __ (D.D.C. 1998). The second interpretation is that a *qui tam* relator steps into the government's shoes so that subsection (b)(2) will toll the limitations period until the *relator* gains knowledge of the alleged wrongdoing. *E.g.*, *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir. 1996); *United States ex rel. Malloy v. Telephonics Corp.*, 68 Fed. App'x 270 (3rd Cir. 2003); *United States ex rel. Bidani v. Lewis*, No. 97 C 6502, 1999 WL 163053 (N.D. Ill. Mar. 12, 1999). The third

11

interpretation is that subsection (b)(2) applies to all FCA actions and tolls the limitations period until the relevant government official learns of the alleged FCA violation. *United States ex rel. Colunga v. Hercules*, No. 89-CV-954B, 1998 WL 310481 (D. Utah Mar. 6, 1998). In order to determine the merits of Defendants' statute of limitations defense, this Court must first decide which of the above interpretations is the appropriate interpretation to apply to this *qui tam* action. The Court must then decide whether Relators timely filed their Complaint according to the appropriate interpretation of the FCA tolling provision.

Relators contend that the third interpretation is the correct and appropriate interpretation. They urge this Court to find both that subsection (b)(2) applies to this *qui tam* action and that the limitations period was tolled for three years from the date on which they provided the USDOJ with relevant evidence of Defendants' false statements. Defendants, on the other hand, advocate for the most restrictive interpretation—that the FCA tolling provision never applies to *qui tam* actions in which the government chooses not to intervene. Thus, according to Defendants, Relators are bound by the six year limitations period outlined in subsection (b)(1) and the Complaint is untimely. The Court finds persuasive the reasoning of those courts that reject the most restrictive interpretation of the tolling provision and finds that subsection (b)(2) applies to the present *qui tam* action. *See, e.g.*, *Hyatt*, 91 F.3d at 1214 ("Section 3731(b) delineates the statute of limitations for a 'civil action under section 3730.' No distinction is made between civil actions brought by the government under § 3731(a) and those brought by *qui tam* plaintiffs under § 3730(b). . . . If Congress had intended the tolling

provisions of § 3731(b)(2) to apply solely to suits brought by the Attorney General, it could have easily expressed its specific intent."); *Bidani*, 1999 WL 163053 at *9 (" . . . [Section] 3731(b)(2) is construed as applying to actions brought by a qui tam plaintiff and in which the government has not joined. In such cases, the three-year knowledge rule is measured by the knowledge of the qui tam plaintiff."). Under either of the other interpretations, the Court finds that the Complaint "identif[ies] facts that are suggestive enough to render [it] plausible[]" that the limitations period was tolled such that this action is timely.[5] *Bell Atl. Corp.*, __ U.S. __, 127 S. Ct. at 1965. Therefore, the Court denies Defendants' motions to dismiss based upon the statute of limitations.

### C. Rule 9(b)

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A complaint alleging a violation of the FCA must comply with the requirements in Rule 9(b). *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309 (11th Cir. 2002); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). To satisfy the "particularity" requirement, a *qui tam* relator must plead "facts as to time, place, and substance of the defendant's alleged fraud, and the details of the defendant['s] allegedly fraudulent act, when they occurred, and who engaged in them." *Corsello*, 428 F.3d at 1012 (internal quotation marks and citations

---

[5] Relators claim that once they gained knowledge of the allegedly fraudulent content of Defendants' grant applications, they provided that information to the USDOJ. Therefore, according to Relators, both Relators and the USDOJ gained knowledge of the alleged FCA violation in late-2004.

13

omitted). Defendants assert that Relators failed to plead their claims "with particularity" because: (1) with respect to the Risse project grant application, Relators did not identify the fraud specific to each Defendant; and (2) with respect to the nine additional grant applications, Relators did not allege any specific information identifying the fraud contained therein.[6]

Despite Defendants argument to the contrary, Relators' Complaint clearly pleads "facts as to time, place, and substance of the [] alleged fraud, and the details of the [] allegedly fraudulent act[s], when they occurred, and who engaged in them."[7] *Corsello*, 428 F.3d at 1012. First, the Complaint alleges that Defendants Walker, Brobst, Gaskin, Miller, and Risse met in December 1998 to discuss the Risse project, which Defendants Walker and Brobst specifically solicited to benefit the EPA. (Compl. ¶¶ 22, 29.) Second, Relators identify that Defendants Risse, Gaskin, and Miller submitted the Risse project grant application on June 15, 1999, and that this application falsely claimed that: (1) "the Risse project would not directly benefit EPA"; (2) "Defendant Risse was the Principal Investigator and . . . was uniquely qualified to do the work"; (3) "the duration of the project was too short for QA/QC measures to be necessary"; and (4) "no forage samples would be collected under drought conditions[.]" (Compl.

---

[6]Defendants also contend that Relators failed to link the allegedly false and fraudulent data and conclusions presented in the Gaskin paper to a "claim for payment." It is clear, however, that Relators do not allege that the Gaskin paper itself constitutes a violation of the FCA, so the Court need not address this argument.

[7]Although Relators claim that the Board and the Foundation are vicariously liable for the fraudulent acts of the individual Defendants, they did not allege vicarious liability in the Complaint. The adequacy of the pleadings with respect to these Defendants is addressed in the section of this Order devoted to individually asserted defenses.

14

¶¶ 24, 29, 30, 31.) Relators also specifically allege that Defendants Miller, Gaskin, Walker, and Brobst failed to disclose financial conflicts of interest. (Compl. ¶ 32.) Relators describe their bases for alleging that these statements were false, and also allege that Defendants knew of their falsity. (*See* Compl. ¶¶ 29-34.) Furthermore, Relators contend that both the Risse project and the Gaskin paper were based on false and fraudulent data, and they provide numerous factual allegations to support this contention.[8] (*See* Compl. ¶¶ 35-84.) Finally, Relators assert that Defendants used their data, which was known to be false, to submit numerous additional research grant applications that contained false claims of scientific validity.[9] (*See* Compl. ¶¶ 63-86.) In short, the Complaint "alert[s]

---

[8]Relators clearly allege that Defendants Gaskin, Miller, Tollner, and Brobst participated in the Risse project and contributed to the Gaskin paper. They also allege that Defendant Walker "was directly involved from the beginning in representing Augusta's unreliable and false historical data as scientifically credible." (Compl. ¶ 37.) According to Relators, "Defendant Walker suggested to Defendant Miller that he should just 'estimate' the historical application rates[,]" and "[t]his representation was made in the Gaskin paper . . . ." (*Id.*)

[9]It is unclear whether Relators are alleging that the only false and fraudulent claims included in the additional research grant applications are limited to the scientific data and conclusions from the Risse project and Gaskin paper. Relators clearly allege that Defendants submitted numerous grant applications after the completion of the Risse project, and they further allege that Defendants based these applications on the false or fabricated data from the Risse project and the Gaskin paper. However, to the extent Relators allege that these subsequent grant applications contain allegedly false statements that are unrelated to the scientific validity of Defendants' research data and conclusions, Relators have failed to plead these false claims with the specificity required by Rule 9(b). It may be that Relators are making no such claim. If such a claim is being made, however, then it needs to be plead with more particularity. Rather than dismiss any such claims at this time, the Court allows Relators fourteen days from the date of this Order to amend their Complaint to specifically identify any additional false statements upon which they intend to rely in order to establish additional FCA violations beyond the June 15, 1999 grant application. *See* Fed. R. Civ. P. 15(a) ("[A] party may amend the party's pleading [] by leave of court . . . ; and leave shall be

15

defendants to the precise misconduct with which they are charged . . . ." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (internal quotation marks and citation omitted). Based on the foregoing, the Court denies Defendants' motions to dismiss pursuant to Rule 9(b).

**II. Individual Defenses of the Board, the Foundation, Walker, and Brobst**

    A. The Board and the Foundation

In addition to the common defenses, the Board and the Foundation, assert defenses that solely relate to them. The Board argues that it should be dismissed as a Defendant because, under the law, the Board is not a "person" subject to liability under the FCA. Relators argue that the Board is a state-created corporation and that the Board is not entitled to sovereign immunity in an action where the United States is the real party-in-interest. Although Relators are correct that municipal corporations may be subject to FCA liability, *see generally Cook County v. United States ex rel. Chandler*, 538 U.S. 119 (2003), the Board clearly is not a municipal corporation, but an agency of the State of Georgia. *Bd. of Regents v. Doe*, 278 Ga. App. 878, 878, 630 S.E.2d 85, 87 (Ga. Ct. App. 2006) ("The Board of Regents [] is a state agency that governs and manages the University System of Georgia and its member institutions[.]"); *see also* O.C.G.A. § 20-3-36 (providing sovereign immunity defense to the Board of Regents). In *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, the Supreme Court specifically held that the FCA "does not subject a State (or state agency) to liability . . . ." 529 U.S. 765, 788 (2000). Since the Board is an agency of the State of Georgia, it

---

freely given when justice so requires.").

16

is not a "person" subject to liability under the FCA and must be dismissed as a Defendant.

The Foundation, while acknowledging that it is a "person" for FCA purposes, maintains that it cannot be liable under the FCA because it is undisputed that it did not employ any of the individual Defendants and thus cannot be found vicariously liable for their allegedly false statements. *See Grand Union Co.*, 696 F.2d at 891. In support of this argument, the Foundation points to Relators' Complaint, which clearly alleges that either the University of Georgia or the EPA employs each of the individual Defendants. (*See* Compl. ¶¶ 8-14.) Having reviewed the entire Complaint, the Court is unable to discern any factual support for the proposition that the Foundation employed any of the individual Defendants. Relators have failed to state a claim for vicarious liability against the Foundation,[10] and none of the factual allegations support a claim for direct liability. Therefore, the Court must likewise dismiss the Foundation.

### B. Defendants Walker and Brobst

In addition to the common defenses asserted by all Defendants, Walker and Brobst maintain that they must be dismissed because they have qualified immunity. They argue that at all relevant times they

---

[10]Relators also assert claims against "John Doe" Defendants, which could potentially include employees of the Foundation. However, it does not satisfy the pleading requirements of Rule 9(b) to assert that an unnamed and unidentified individual, who *may* have been employed by the Foundation, *may* have submitted a false claim to the government that violates the FCA. *See Corsello v. Lincare, Inc.*, 428 F.3w 1008, 1012 (11th Cir. 2005) ("To state a claim under the False Claims Act with particularity, the complaint must allege facts as to time, place, and substance of the defendant's alleged fraud, [and] the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.") (alteration in original) (internal quotation marks and citation omitted).

17

were acting within their discretionary authority as employees of EPA. The qualified immunity defense provides government officials performing discretionary functions with complete protection from damages liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). According to Defendants Walker and Brobst, there is no "clearly established law" to provide them with notice that their involvement with the Risse project could subject them to personal liability under the FCA. Here, however, Relators plainly allege that Defendants Walker and Brobst "*knowingly* caused to be submitted [] 10 grant applications, whereby they would obtain federal funds, by the use of false or fabricated data[,]" to discredit the lawsuits filed by Relators McElmurray and Boyce. (Compl. ¶ 86 (emphasis added); *see also*, *e.g.*, *id.* at ¶¶ 21, 29.) At this stage in the litigation, the Court is required to accept all of Relators allegations as true. Thus, the Court must accept that Defendants Walker and Brobst knowingly caused false grant applications to be submitted to the EPA, which clearly violates the FCA. Since "[t]he [qualified immunity] defense is designed to protect 'all but the plainly incompetent or those who knowingly violated the law[,]'" *Morse v. Frederick*, __ U.S. __, 127 S. Ct. 2618, 2640 (2007) (internal citation omitted), the Court finds that Defendants Walker and Brobst are not entitled to qualified immunity.

CONCLUSION

For the reasons stated herein, the Court grants the Board of Regents' (Doc. 21) and the University of Georgia Research Foundation's

18

(Doc. 22) Motions to Dismiss.  The Court denies the Motion to Dismiss by Defendants Gaskin, Miller, Tollner, and Risse (Doc. 23) and the Motion to Dismiss by Defendants John Walker Ph.D. and Robert B. Brobst (Doc. 41).

IT IS SO ORDERED, this 14th day of September, 2007.

S/Clay D. Land  
CLAY D. LAND  
UNITED STATES DISTRICT JUDGE