IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* DAVID L. LEWIS, Ph.D., *et al.*, | * | |
| | * | |
| Plaintiffs, | * | CASE NO. 3:06-CV-16(CDL) |
| vs. | * | |
| JOHN WALKER, Ph.D., *et al.*, | * | |
| Defendants. | * | |
| ———————————— | * | |

<u>O R D E R</u>

Relators move to compel the deposition of Environmental Protection Agency ("EPA") employee Madolyn Dominy (Doc. 120). For the following reasons, the motion to compel is granted. As discussed further below, the Court modifies the scheduling order to set a deadline for the deposition of Madolyn Dominy and to update the dispositive motions deadline.

BACKGROUND

In this action, Relators claim that University of Georgia ("UGA") researchers violated the False Claims Act, 31 U.S.C. § 3729, by making false statements in a June 1999 grant application to the U.S. Environmental Protection Agency ("EPA"). Relators also assert that several EPA employees made misrepresentations to assist the UGA researchers in obtaining federal monies through a cooperative agreement. Defendants received an EPA grant, and Relators contend that Defendants used the grant to produce an article ("Gaskin Study")

containing false, unreliable and fabricated scientific data regarding the effects of sewage sludge on animal health and land.  Relators further claim that Defendants cited the Gaskin Study in additional grant applications, thus violating the False Claims Act.

Relators seek to depose Madolyn Dominy, an employee of the EPA who is not a party in this action.  Relators initially subpoenaed Dominy for the deposition but withdrew the subpoena at the EPA's request and asked the EPA for permission to take the deposition.  In their deposition request, Relators explained why they believe that Dominy's testimony is required in this case and why allowing Dominy to testify is in the EPA's interest.  After reviewing Relators' request, the EPA concluded that Dominy's deposition would not be "an appropriate use of EPA time and resources" and was not "clearly in the interests of the EPA."  (Ex. C to Pl.'s Mot. to Compel, Letter from M. Wilkes to E. Hallman 3, June 5, 2009 [hereinafter Wilkes Letter].)  Therefore, the EPA declined to make Dominy available for the deposition.

Relators now move to compel Dominy's deposition, contending that the Court may compel the EPA to make her available under Federal Rule of Civil Procedure 45.  In the alternative, Relators assert that the EPA was arbitrary and capricious in declining to make Dominy available for the deposition.  The EPA argues that this issue must be decided under the Administrative Procedure Act ("APA"), 5 U.S.C. §§

2

701-706, and that its decision not to make Dominy available for the deposition was not arbitrary and capricious.

PRELIMINARY MATTERS

The EPA contends that Relators' motion to compel is improper because (1) there is presently no pending federal subpoena as to Dominy and (2) Relators did not challenge the EPA's decision in a direct APA action against the EPA.   Regarding the first argument, Relators withdrew their subpoena so that they could seek agency review of their request to depose Dominy.   Relators requested the deposition, and the EPA, through the "designee of EPA's General Counsel for testimony requests made to Region 4 employees," denied the request after analyzing it under the EPA's procedures that apply when an employee is subpoenaed.   (Wilkes Letter at 1-2 (citing 40 C.F.R. § 2.404).)   The EPA contends that the denial was a "final agency decision."   The Court sees no reason why Relators must, prior to seeking review, go through the additional step of issuing a second subpoena that will be challenged on the exact same grounds set forth in the Wilkes Letter.   Accordingly, the lack of a pending federal subpoena is not fatal to the present motion to compel.

As to the second argument, the EPA points the Court to authority suggesting that in some instances the proper route for challenging an agency decision is a direct APA action against the agency.   For example, if the court in which the underlying action is pending cannot issue a valid subpoena for the agency witness and a subpoena

3

is issued by another court, then the subpoena must be challenged in the court that issued it—not in the underlying action. *See Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1195-96 (11th Cir. 1991) (collateral action challenging subpoenas issued to *Georgia* residents in actions pending in *Florida* federal court); *cf. Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) (holding that sole remedy for *state court* litigant seeking to challenge agency's decision not to produce documents is collateral action in federal court under APA because state court cannot enforce subpoena against federal government). Here, the Court sees no reason why it cannot decide as part of the presently pending *qui tam* action whether the EPA properly declined to permit testimony of its employee, a Georgia resident who was initially issued a subpoena from this Court for a deposition to be held within 100 miles of the Court's Athens Division.

STANDARD OF REVIEW

The Federal Housekeeping Act, 5 U.S.C. § 301, permits federal agencies to prescribe regulations establishing conditions for the production or disclosure of agency information, including testimony by agency employees. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 469-70 (1951) (upholding Attorney General's regulations restricting production of Justice Department documents); *Moore*, 927 F.2d at 1197 (noting that since *Touhy,* "an unbroken line of authority directly supports [the] contention that a federal employee may not be

4

compelled to obey a subpoena contrary to his federal employer's instructions under valid agency regulations" (internal quotations omitted; alteration in original).

Pursuant to 5 U.S.C. § 301, the EPA promulgated regulations restricting EPA employees from providing testimony and documents "concerning information acquired in the course of performing official duties or because of the employee's official relationship with EPA[.]" 40 C.F.R. § 2.402(b). Specifically, an EPA employee may not testify or produce documents on official EPA matters in federal civil proceedings where the United States, the EPA or another Federal agency is not a party, unless the employee is authorized by the EPA to do so.[1]   *Id.* §§ 2.401(a)(2), 2.402(b). The purpose of the regulation is "to ensure that employees' official time is used only for official purposes, to maintain the impartiality of EPA among private litigants, to ensure that public funds are not used for private purposes and to establish procedures for approving testimony or production of documents when clearly in the interests of EPA." *Id.* § 2.401(c); *see also Touhy*, 340 U.S. at 468 ("When one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure

---

[1] The United States declined to intervene in this *qui tam* action. Therefore, it is not a litigant subject to discovery. *United States ex rel. Eisenstein v. City of New York*, 129 S. Ct. 2230, 2234 (2009) ("The United States . . . is a 'party' to a privately filed FCA action only if it intervenes in accordance with the procedures established by federal law.").

in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas duces tecum will be willingly obeyed or challenged is obvious."). The EPA regulations require that, in deciding whether to authorize an employee to testify pursuant to a subpoena, the EPA official must determine "whether compliance with the request would clearly be in the interests of EPA." 40 C.F.R. § 2.403, *accord id.* § 2.404.

Relators contend that the Court should apply a balancing test under Federal Rule of Civil Procedure 45 to determine whether Relators' need for Dominy's testimony outweighs the EPA's interest in avoiding undue burden or expense. As explained by the Eleventh Circuit, however, an agency's decision to preclude testimony of its employee can only be overturned if the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not [in accordance with] law." *Moore*, 927 F.2d at 1197 (citing 5 U.S.C. § 706(2)(A)). Accordingly, the Court concludes that the EPA's decision not to permit Dominy's testimony must be reviewed as a final agency action under the APA, subject to the arbitrary and capricious standard. *See id.*

"The arbitrary and capricious standard is exceedingly deferential[,]" and the Court may not substitute its judgment for the agency's as long as the agency's conclusions are rational. *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257,

6

1264 (11th Cir. 2009) (internal quotation marks omitted).   An
agency's action is arbitrary and capricious if the agency

> relied on factors which Congress has not intended it to
> consider, entirely failed to consider an important aspect
> of the problem, offered an explanation for its decision
> that runs counter to the evidence before the agency, or is
> so implausible that it could not be ascribed to a
> difference in view or the product of agency expertise.

*Id.* (internal quotation marks omitted).   The courts must be most
deferential when an agency "is making predictions, within its area of
special expertise, at the frontiers of science" and may be less
deferential when reviewing "simple findings of fact."   *Id.* (internal
quotation marks omitted).

                        DISCUSSION

     This action concerns studies related to sewage sludge that was
processed by an Augusta, Georgia wastewater treatment plant and
applied as fertilizer to various parcels of land, including the farms
of Relators Boyce and McElmurray.   During the late 1990s, Boyce and
McElmurray alleged that the sewage sludge contained hazardous wastes
which ultimately poisoned and killed their dairy cows.   Relators
contend that Defendants, including UGA researchers and EPA employees,
worked together on studies of the Augusta sewage sludge land
application project with an agenda of promoting land application of
sewage sludge as safe and beneficial and discrediting any allegations
to the contrary.

     Dominy was the EPA's Region 4 Biosolids Coordinator from 1998 to
2004.   (Wilkes Letter at 2.)   Relators point to evidence that Dominy

                              7

participated in various discussions related to land application of sewage sludge on the Boyce and McElmurray farms and that she was involved in investigations of the Augusta sewage sludge land application project.[2]  Specifically, Dominy attended a 1998 meeting at UGA with Defendants Gaskin, Brobst, and Miller to discuss the land application of sewage sludge on the Boyce and McElmurray farms. (Brobst Dep. 92:6-20, Apr. 14, 2009.)  Relators characterize this meeting as the initial planning of the Gaskin Study.  In addition, Dominy was the first person to tell the EPA's Biosolids Incident Response Team about lawsuits related to the Boyce and McElmurray farms.  (Bastian Dep. 29:3-21, Apr. 9, 2009.)  Dominy was also involved in an investigation of the land application of sewage sludge produced by the Augusta plant—the same project at issue in the Gaskin Study.  (Brobst Dep. 136:25-137:4; Bastian Dep. 97:4-23.)

Relators contend that if they are permitted to question Dominy on these areas, her answers "will shed light on the true motives for the grant application currently under review, the deception in which EPA employees engaged to protect the sewage sludge application program and the fraudulent study funded by the EPA grant that is the subject of this litigation."  (Br. in Supp. of Relators' M. to Compel 7-8.)  Relators argue that Dominy's testimony is clearly in the

_____

[2]Relators did not produce this evidence to the EPA in support of their deposition request, but they did represent that testimony and documents obtained during discovery suggested that Dominy may have knowledge of several issues pertinent to this action.

interest of the EPA because it may help the EPA uncover any improper conduct by EPA employees with regard to the Augusta sewage sludge land application project and prevent future improper conduct.

In its response to Relators' request for Dominy's deposition, the EPA essentially concluded that any potential testimony by Dominy is not relevant to Relators' claims, so making Dominy available for the deposition is not clearly in the interest of the EPA.[3]  The EPA admits that Dominy "was involved in a variety of different biosolids cases and issues within Region 4 states" but asserts that Dominy "was not involved in the formulation or the awarding of any grants, including [the] grant which was awarded to the University of Georgia (a.k.a. the Gaskin Study) by EPA Headquarters in Washington, D.C." (Wilkes Letter 2-3.)  According to the EPA, Dominy "did not visit land application sites in . . . Georgia relating to the Gaskin study, and she did not draft the report relating to the Gaskin Study."  The EPA acknowledges that Dominy routinely communicated with Defendants Brobst, Bastian and Walker "on issues related to biosolids, including the City of Augusta Situations" but contends that Relators fail to explain how "routine communication would support the Relators' claims of false statements in the grant application, the grant process, or

---

[3]The EPA also apparently concluded that Relators' claims of misconduct by EPA employees are without merit because the Department of Justice concluded "that the facts did not warrant further involvement by the federal government."  (Wilkes Letter at 2.)  The EPA does not provide any other basis for its refusal to permit Dominy's deposition and does not suggest that all of the information Relators seek from Dominy is available through another source.

in the Gaskin Study itself, such that making Ms. Dominy available for the taking of testimony is clearly in the interest of EPA." (*Id.* at 3.)

Based on the information before the Court, including the EPA's admissions in its response to Relators' request for Dominy's deposition, the Court finds that Dominy likely possesses information that is relevant to Relators' claims. The EPA's proffered explanation for its decision not to permit the deposition of Dominy "runs counter to the evidence before the agency." *Miccosukee Tribe*, 566 F.3d at 1264 (internal quotation marks omitted). Since Dominy's deposition is likely to lead to the discovery of relevant evidence, the Court finds that the EPA's refusal to allow her to be deposed based solely on an unsubstantiated and subjective belief that she possesses no relevant information was arbitrary and capricious. Accordingly, Relators' motion to compel is granted and the EPA shall make Dominy available for a deposition at a mutually convenient time and place prior to September 11, 2009.

## CONCLUSION

For the reasons set forth above, Relators' Motion to Compel the Deposition of Madolyn Dominy (Doc. 120) is granted. The scheduling order is hereby modified as follows:

The deposition of Madolyn Dominy shall be completed on or before September 11, 2009.

Dispositive motions are due September 25, 2009.

10

Responses to dispositive motions are due October 30, 2009.

Any replies in support of dispositive motions are due November 13, 2009.

No extensions will be granted.

IT IS SO ORDERED, this 21st day of August, 2009.

                                    S/Clay D. Land
                                       CLAY D. LAND
                                 UNITED STATES DISTRICT JUDGE