IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

UNITED STATES OF AMERICA, *ex*       *
*rel.* DAVID L. LEWIS, Ph.D., *et*
*al.*,       *

     Plaintiffs,       *       CASE NO. 3:06-CV-16 (CDL)

vs.       *

JOHN WALKER, PH.D., *et al.*,       *

     Defendants.       *

_____

O R D E R

INTRODUCTION

In this *qui tam* action, Relators claim that University of
Georgia ("UGA") researchers violated the False Claims Act ("FCA"),
31 U.S.C. §§ 3729-33, by making false statements in a June 1999 grant
application to the United States Environmental Protection Agency
("EPA").[1] The grant application sought federal funds to support a
research project related to the land application of sewage sludge.
Relators also assert that several EPA employees asked the UGA
researchers to apply for the grant and that the EPA employees made
misrepresentations to help the UGA researchers receive the EPA grant.
The UGA researchers received the EPA grant, and Relators contend that

_____

[1]"*Qui tam*" is an abbreviation for the Latin phrase "*qui tam pro domino
rege quam pro se ipso in hac parte sequitur,*" which means "who as well for
the king as for himself sues in this matter." Black's Law Dictionary 1368
(9th ed. 2009). An individual bringing a *qui tam* action on behalf of the
Government is known as a "Relator." *Cooper v. Blue Cross & Blue Shield of
Fla., Inc.*, 19 F.3d 562, 565 n.2 (11th Cir. 1994) (per curiam).

they used the grant to produce an article containing false, unreliable, and fabricated scientific data regarding the effects of sewage sludge on animal health and land.

Presently pending before the Court are the following motions: Motion for Summary Judgment filed by John Walker, Ph.D., Robert B. Brobst, Robert K. Bastian, and Charles E. Gross ("EPA Defendants") (ECF No. 131), Motion for Summary Judgment filed by Julia Gaskin, William P. Miller, E. William Tollner, and L. Mark Risse ("UGA Defendants") (ECF No. 132), and the Motion for Summary Judgment filed by Dr. Joe L. Key and the University of Georgia Research Foundation, Inc. ("Foundation") (ECF No. 134).

The Court previously denied Defendants' motions to dismiss in this matter, concluding that Relators alleged sufficient facts to demonstrate that their claims are not based on publicly disclosed information.[2] *United States ex rel. Lewis v. Walker*, No. 3:06-CV-16 (CDL), 2007 WL 2713018, at *4 (M.D. Ga. Sept. 14, 2007). Specifically, the Court concluded that it was not apparent on the face of the Complaint whether certain correspondence between Defendants, on which Relators rely in support of their claims, was publicly disclosed; the Court noted that Defendants did not, in

---

[2] Publicly disclosed information generally cannot be relied on to support a claim under the False Claims Act unless the relator is an original source of the information. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

2

making their motions to dismiss, argue that the correspondence was publicly disclosed. *Id.* Now that the parties have engaged in considerable discovery, the Court must determine whether Relators' claims are, in fact, based on publicly disclosed information. For the reasons set forth below, the Court concludes that Relators' claims are based on publicly disclosed information and that Relators are not an original source of that information; the Court thus does not possess subject matter jurisdiction over this action. Accordingly, Plaintiffs' action is dismissed for lack of subject matter jurisdiction.

## STANDARD OF REVIEW

Defendants seek summary judgment contending that no genuine issues of material fact exist to be tried and that they are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c)(2). However, the Court must first determine whether it has jurisdiction over the subject matter of this action before it addresses the merits. Since the present motions for summary judgment address the issue of subject matter jurisdiction by relying on matters beyond the face of the Complaint, the subject matter jurisdiction analysis is similar to the summary judgment analysis. *Cf. Lawrence v. Dunbar*, 919 F.2d 1525, 1530 (11th Cir. 1990) (adopting summary judgment standard in evaluating Rule 12(b)(1) motions that also implicate the merits of a claim). The Court must determine whether genuine issues

of material fact exist on the narrow issue of jurisdiction. *Id.* In determining whether a *genuine* issue of *material* fact exists, the evidence is viewed in the light most favorable to the party opposing the motion, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the issue. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable factfinder to find in favor of the nonmoving party. *Id.*

## BACKGROUND

The evidence viewed in the light most favorable to Relators reveals the following.

As the Court has previously noted, the present action is the latest in a series of lawsuits involving Relators McElmurray and Boyce, two dairy farmers, and Relator Lewis, a research microbiologist, regarding the application of treated sewage sludge to Georgia farmlands. *Walker*, 2007 WL 2713018, at *1-*2; *see also McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1247-50 (11th Cir. 2007) (discussing separate litigation involving same Relators regarding sewage sludge application program); *United States ex rel. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 464 F. Supp. 2d 1327, 1328-40 (N.D. Ga. 2006) (same). This action relates to a $12,274 grant that the UGA Defendants received from the

EPA in 1999 to study whether there were elevated metal concentrations in the soil and hay of fields that received treated sewage sludge compared with fields that received commercial fertilizer or other amendments. Relators contend that Defendants worked together to submit the EPA grant application, which, for various reasons, they claim was materially false. They argue that this "false claim" is actionable under the FCA.

The evidence in support of Relators' claims consists chiefly of two types of information: (1) the grant application, which Relators contend contains misrepresentations regarding the study for which the EPA grant was sought and misrepresentations regarding the EPA Defendants' involvement in the grant application process, and (2) correspondence to, from, and among Defendants in this case, which Relators argue contains the truth regarding the study and the EPA Defendants' involvement. Relators concede that they obtained the grant application using open records act requests pursuant to the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and/or the Georgia Open Records Act ("GORA"), O.C.G.A. § 50-18-70 *et seq*.[3] Relators also acknowledge that they obtained copies of correspondence

---

[3]According to Relators, they "[m]ore likely than not" received the grant application documents via a GORA request as opposed to a FOIA request. Lewis Dep. 85:18-86:6, Feb. 11, 2009, ECF No. 142. Defendants suggest that Relators also received the grant application from the EPA in response to a FOIA request. *See* EPA Defs.' Mot. for Summ. J. Ex. M, FOIA Request from E. Hallman to EPA GF000200-GF000201, Oct. 7, 2005, ECF No. 131-17.

to, from, and among Defendants in response to FOIA and GORA requests by their attorney, as well as from discovery in prior litigation. *E.g.*, McElmurray Dep. 44:14-17, 45:9-18, 77:1-25, Feb. 10, 2009, ECF No. 141 (confirming that Relators received certain documents via GORA and FOIA requests); Relators' Resp. to EPA Defs.' Statement of Undisputed Material Facts ¶ 79, ECF No. 172 (stating, without citation to the record, that prior litigation contains "thousands of additional documents" relating to correspondence to, from, and among Defendants). It is undisputed that Relators were not involved in drafting, reviewing, or approving the grant application, and they were not parties to any of the communications between Defendants regarding the grant application.

Relators filed this *qui tam* action in the name of the United States under the FCA on February 17, 2006. As required by the FCA, the case was initially filed under seal. 31 U.S.C. § 3730(b)(2); *accord Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567 n.8. The United States declined to intervene in the action on October 20, 2006, at which time the Court unsealed the Complaint, and Relators were permitted to pursue this action.

DISCUSSION

## I. The False Claims Act

Under 31 U.S.C. § 3729(a)(1), the FCA imposed liability on any person who "knowingly presents, or causes to be presented, to an

officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval[.]"  31 U.S.C. § 3729(a)(1) (2006).[4]  In addition, under 31 U.S.C. § 3729(a)(1)(B), the FCA imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(B) (2009).[5]

The FCA "was first passed by Congress in 1863, at the request of President Lincoln, in an effort to combat profiteering by Union Army suppliers during the Civil War."  *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1497 (11th Cir. 1991).  "The purpose of the *qui tam* provision, then as now, was to aid in the effort to root out fraud against the government" by encouraging "private individuals who are aware of fraud being perpetrated against the Government to bring such information forward."  *E.g., id.* (internal quotation marks omitted).  After a rise of "parasitic" *qui tam* suits by private individuals who "contributed nothing to the discovery of the fraud alleged," Congress amended the FCA to bar *qui tam* suits "based upon

---

[4]The Court quotes the version of § 3729(a) that was in effect at the time Relators filed their Complaint.  In 2009, Congress amended and renumbered § 3729(a) by passing the Fraud Enforcement & Recovery Act of 2009 § 4(a), Pub. L. No. 111-21, 123 Stat. 1617 (2009).  The amendment to § 3729(a)(1) was not made retroactive.  *Id.* § 4(f), 123 Stat. at 1625.

[5]The amendment to § 3729(a)(2)—which is now § 3729(a)(1)(B)—was made retroactive to June 7, 2008 for all FCA claims that were "pending on or after that date."  Fraud Enforcement & Recovery Act of 2009 § 4(f) 123 Stat. at 1625.

evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought." *Id.* (internal quotation marks omitted). The number of *qui tam* suits "as a weapon in fighting fraud against the government" declined. *Id.* "Recognizing the need to increase government and private efforts to stop fraud," Congress again amended the FCA in 1986. *Cooper*, 19 F.3d at 565 & n.2; *accord Williams*, 931 F.2d at 1497. "The 1986 amendments were intended to increase private citizen involvement in exposing fraud against the government while preventing opportunistic suits by private persons who heard of fraud but played no part in exposing it." *Cooper*, 19 F.3d at 565. In making the 1986 amendments, Congress "sought to resolve the tension between . . . encouraging people to come forward with information and . . . preventing parasitic lawsuits." *Id.* (internal quotation marks omitted).

## II. FCA's Public Disclosure Bar

The FCA's public disclosure bar "deprives courts of jurisdiction over *qui tam* suits when the relevant information has already entered the public domain through certain channels." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 130 S. Ct. 1396, 1401 (2010). Specifically, a relator may not bring a claim under the FCA when the claim is "based on" information that has been "publicly disclosed" within the meaning of the FCA unless the relator

is the "original source" of the information.  *E.g., McElmurray*, 501 F.3d at 1251 (citing 31 U.S.C. § 3730(e)(4)(A)(West 2007)).[6]  "The purpose of this jurisdictional bar is to accommodate the primary goals of the False Claims Act: (1) promoting private citizen involvement in exposing fraud against the government and (2) preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud."  *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004); *accord Cooper*, 19 F.3d at 565.

The FCA does not bar all actions that rely on publicly disclosed information.  It "bars actions based upon information that is publicly disclosed only in certain enumerated instances." *Williams*, 931 F.2d at 1499.  Those enumerated instances are: "public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or [General] Accounting Office report, hearing, audit, or investigation, or from the news media[.]"  31 U.S.C. § 3730(e)(4)(A) (2006); *accord Williams*, 931 F.2d at 1499 (finding that "methods of 'public disclosure' set forth in section 3730(e)(4)(A) are exclusive of the types of public disclosure that would defeat jurisdiction under that section").  The Eleventh Circuit Court of Appeals uses a three-part

---

[6]The amendment to § 3730 was not made retroactive.  Fraud Enforcement & Recovery Act of 2009 § 4(f), 123 Stat. at 1625.

inquiry to determine jurisdiction over an FCA claim based on information that is allegedly publicly disclosed: "'(1) have the allegations made by the plaintiff been publicly disclosed; (2) if so, is the disclosed information the basis of the plaintiff's suit; (3) if yes, is the plaintiff an "original source" of that information.'" *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 762 (11th Cir. 2006) (per curiam) (quoting *Cooper*, 19 F.3d at 565 n.4). Thus, the Court must first decide whether Relators' allegations are "based on" information that has been "publicly disclosed" within the meaning of the FCA. *E.g., McElmurray*, 501 F.3d at 1251. If the answer to that question is yes, then the Court must determine whether Relators are an "original source" of the information; if the answer is no and thus the information is not deemed to have been "publicly disclosed," the Court need not reach the "original source" question. *Williams*, 931 F.2d at 1500.

A *qui tam* action is "based on" a public disclosure if it is "supported by" publicly disclosed information. The "language [of the FCA] is most naturally read to preclude suits based in *any part* on publically disclosed information." *Cooper*, 19 F.3d at 567. In *Cooper*, for example, the Eleventh Circuit concluded that the relator's claim was "based on" information that was publicly disclosed in a United States House of Representatives subcommittee hearing that took place five weeks before the relator filed his *qui*

*tam* action, even though the record showed that the relator had gathered "much evidence on his own." *Id.* at 567-68. In the present action, Relators cannot seriously dispute that their allegations are "based on" (1) the grant application, which Relators contend contains misrepresentations regarding the study for which the EPA grant was sought and misrepresentations regarding the EPA Defendants' involvement in the grant application process, and (2) correspondence to, from, and among Defendants, which Relators argue contains the true state of facts regarding the study and the EPA Defendants' involvement. The question, therefore, is whether this information was publicly disclosed within the meaning of the FCA.

Defendants contend that the grant application and the correspondence between Defendants was publicly disclosed because Relators obtained them in response to open records act requests pursuant to FOIA and/or GORA.[7] Relators argue, however, that

---

[7]Defendants also contend that Relators' claim is barred because their allegations were publicly disclosed in an article that was published prior to the filing of Relators' FCA action. *See* Caroline Snyder, *The Dirty Work of Promoting "Recycling" of America's Sewage Sludge*, 11 Int'l J. Occupational & Envtl. Health 415 (2005). Relators contend that they were an original source of the allegations contained in the Snyder article because Relator Lewis was involved in writing the first draft of the article. The Court notes that the Snyder article does not cite any sources in support of its assertions that "EPA's grant to UGA was never meant to be used for a thorough and honest investigation of the poisoned-cattle cases" or that the EPA "funded and 'commissioned' [the study resulting from the grant] expressly to protect EPA's position that its land-application polices are safe and to help the City of Augusta with the pending lawsuits [brought by Relators McElmurry and Boyce]." *Id.* at 422. Neither the Snyder article nor Relators points to an independent basis for the allegations made in the article, and the Court concludes that any factual

11

responses to open records act requests do not constitute public disclosures within the meaning of the FCA.[8]  Thus, the key issue here is whether documents produced in response to an open records request under FOIA or GORA are publicly disclosed within the meaning of the FCA.  This appears to be an issue of first impression in the Eleventh Circuit.[9]

The majority of circuits that have decided the issue have determined that a government agency's response to an open records act request is a publicly disclosed "administrative report" regardless of what kind of document is produced in response to the request.  *E.g.,* *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 56 (1st Cir. 2009); *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1051 (10th Cir. 2004); *United States ex rel. Reagan v. E.*

---

support for the article's allegations comes from the information that was disclosed pursuant to open records responses and in discovery in other litigation.  As discussed in more detail below, Relators are not an original source of that information.

[8]Relators appear to admit that they received some of the correspondence regarding the grant application during discovery in prior litigation, including the lawsuits brought by Relators McElmurray and Boyce against the Consolidated Government of Augusta-Richmond County and a whistle blower case that Lewis filed against the EPA.  Such information was, therefore, publicly disclosed.  *McElmurray*, 501 F.3d at 1252.

[9]In *United States ex rel. Brickman v. Bus. Loan Express, LLC*, Civil Action No. 1:05-CV-3147-JEC, 2007 WL 4553474, *4 (N.D. Ga. Dec. 18, 2007), the court found that FOIA request responses are public disclosures within the meaning of the FCA.  The Eleventh Circuit affirmed the decision in an unpublished decision without specifically addressing the issue. *Brickman v. Bus. Loan Express, LLC*, 310 F. App'x 322, 323 (11th Cir. 2009) (per curiam).

12

*Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 175-76 (5th Cir. 2004); *United States v. A.D. Roe Co.*, 186 F.3d 717, 723-24 & n.6 (6th Cir. 1999); *United States ex rel. Mistick PBT v. Hous. Auth. of Pittsburgh*, 186 F.3d 376, 383 (3d Cir. 1999) (Alito, J.); *see also United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008) (finding that information relator received pursuant to *state* open records act request was a "public disclosure"). In contrast, the Second and Ninth Circuits have determined that an open records act response is only an "administrative report" within the meaning of the FCA public disclosure bar when the document produced in response to the request is itself a congressional, administrative, or GAO report, hearing, audit, or investigation. *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 104-11 (2d Cir. 2010); *United States v. Catholic Healthcare W.*, 445 F.3d 1147, 1152-56 (9th Cir. 2006).[10]

Under both approaches, the courts agree that disclosure of information in response to an open records act request is a "public disclosure" because "information produced in response to [an open records request] becomes public once it is received by the requester." *Kirk*, 601 F.3d at 104; *accord Mistick*, 186 F.3d at 383.

_____

[10]The Fourth Circuit also concluded, in dicta in the footnote of an unpublished opinion, that a response to an open records request is not a "report" sufficient to trigger the public disclosure bar. *United States ex rel. Bondy v. Consumer Health Found.*, 28 F. App'x 178, 181 n.2 (4th Cir. 2001) (per curiam).

13

The courts disagree, however, on whether open records act materials qualify as an "enumerated" source under the FCA. The majority rule treats an open records act response as an "administrative" action because the response is an official government action.[11] *Ondis*, 587 F.3d at 56; *Mistick*, 186 F.3d at 383. The majority also considers such a response to be a "report" because the response "provides information and notification regarding the results of the agency's search for the requested documents and constitutes an official and formal statement concerning those results." *Mistick*, 186 F.3d at 383-84 (referring to the dictionary definition of "report"); *accord Ondis*, 587 F.3d at 56 (stating that "a FOIA response is a report, at least in the sense that it constitutes an official statement concerning the results of the agency's search of its files").

In contrast, the Second and Ninth Circuits interpret "report" to require "work product that represents governmental analysis or leg-work rather than the mechanistic production of documents that follows upon a FOIA request." *Kirk*, 601 F.3d at 106. Thus, under the Second and Ninth Circuits' interpretation, the determination of whether a document obtained through an open records act request "is an enumerated source within the meaning of § 3730(e)(4)(A) depends on

---

[11]The Supreme Court recently held that the FCA's reference to "administrative" reports, audits, and investigations "encompasses disclosures made in state and local sources as well as federal sources." *Graham Cnty.*, 130 S. Ct. at 1400.

14

the nature of the document itself." *Id.* at 107.  In support of this interpretation, the Second and Ninth Circuits rely on the "company of 'neighboring words'" and the FCA's legislative history and conclude that, in the context of the FCA's public disclosure bar, the term "report" "connotes the compilation or analysis of information with the aim of synthesizing that information in order to serve some end of the government." *Id.* at 107-09.  According to the Second and Ninth Circuits, an agency does not, in response to an open records act request, "synthesize the documents or their contents with the aim of itself gleaning any insight or information." *Id.* at 108.  To further bolster their interpretation, these courts caution that a broad interpretation of the term "administrative report" would resurrect the pre-1986 "government possession" jurisdictional bar. *Id.* at 109.[12]

---

[12]The Court observes that there are significant factual differences between the Second and Ninth Circuit cases and this case.  First, in *Catholic Healthcare West*, the relator requested a copy of a grant application from a government agency via FOIA, and the government agency told the relator that she should obtain it directly from the institute where the grant research was being performed.  445 F.3d at 1149. Furthermore, the grant application did not disclose all of the allegations or transactions that formed the basis for the relator's claims because it only disclosed the alleged misrepresentations; the relator discovered the true state of facts through her own extensive research of nonpublic sources. *Id.* at 1149-50.  Second, in *Kirk*, the court emphasized that the relator was an "individual with independent but partial knowledge of a possible fraud" based on his observations as a Vietnam veteran and an employee of a company that made misrepresentations regarding the number of veterans it employed and regarding its compliance with certain reporting requirements. *Kirk*, 601 F.3d at 110.  Here, as discussed in more detail below, Relators did not have any firsthand knowledge of the alleged fraud; rather, when they learned that an EPA grant was a source of funding for the

The Court is not persuaded by the rationale of the Second and Ninth Circuits. First, the FCA itself does not narrow the definition of the word "report"—which is "typically defined as 'something that gives information.'" *Ondis*, 587 F.3d at 56 (quoting Webster's 3d New Int'l Dict. 1925 (2002)). Second, as the *Ondis* court observed, "[j]ust as transmittal of the [open records act] response to the relator constitutes an act of public disclosure, the end product of the government's search (locating and compiling the requested documents) independently constitutes an administrative report—and this is so regardless of the character of the underlying documents." *Id.* Third, the Court notes that while a chief concern of the Second and Ninth Circuit appears to be whether information is publicly accessible rather than simply publicly disclosed, the FCA's public disclosure bar requires that information be publicly disclosed; information may be publicly disclosed—and therefore be deemed to put the government on notice of a fraud perpetrated against it—even if it is "buried in an exhibit that is filed in court without fanfare in an obscure case." *Mistick*, 186 F.3d 383 n.3.[13] Finally, "Congress

UGA Defendants' research, they suspected that they might find problems with the grant application.

[13]"Just as civil discovery is public, it must be the case that information obtained pursuant to an FOIA request has been made public through the administrative process and cannot form the basis of a *qui tam* action. If that were not the case then, like court records, public agency records would be flooded with citizens requesting information in order to bring *qui tam* suits." *United States ex rel. Herbert v. Nat'l Acad. of*

plainly intended the FCA to encourage lawsuits by relators who have *firsthand* knowledge of fraud against the government.  An individual who obtains information through FOIA disclosures in order to uncover fraud is not a person with firsthand knowledge (and, thus, not a person whom Congress chose to reward under the FCA)." *Ondis*, 587 F.3d at 56 (citation omitted) (internal quotation marks omitted); *Mistick*, 186 F.3d at 385 (noting that "Congress did not intend the *qui tam* provision to transform FOIA from sunshine legislation into a search for the pot of gold at the end of the rainbow" (quoting *United States ex rel. Herbert v. Nat'l Acad. of Scis.*, Civ. A. No. 90-2568, 1992 WL 247587, at *6 (D.D.C. Sept. 15, 1992))).  Furthermore, based on the Supreme Court's ruling in *Graham County*, the Court concludes that an open records act response can constitute an administrative report within the meaning of the FCA whether the responding agency is a federal or state governmental agency. *Graham Cnty.*, 130 S. Ct. at 1400 (holding that FCA's reference to "administrative" reports, audits, and investigations "encompasses disclosures made in state and local sources as well as federal sources"); *see also Fried* 527 F.3d at 442 (finding that information relator received pursuant to *state* open records act request was a "public disclosure").

_____

*Scis.*, Civ. A. No. 90-2568, 1992 WL 247587, at *6 (D.D.C. Sept. 15, 1992) (internal quotation marks omitted).

For all of these reasons, the Court concludes that Relators'
action is based on information that was publicly disclosed within the
meaning of the FCA.

**III. Original Source**

Having concluded that Relators' claims are based on publicly
disclosed information, the Court must determine whether Relators are
an "original source" of the information.  The Court finds that they
are not.

To qualify as an original source within the meaning of the FCA,
a relator must have "direct and independent knowledge of the
information on which the allegations are based."
31 U.S.C. § 3730(e)(4)(B) (2006); *accord Rockwell Int'l Corp. v.
United States*, 549 U.S. 457, 470 (2007).  The Supreme Court clarified
that this means that a relator must have direct and independent
knowledge of the information on which *the relator's* allegations are
based.  *Rockwell Int'l Corp.*, 549 U.S. at 470-72.  "The 'original
source' exception was intended to ensure that *qui tam* actions based
*solely* on public disclosures could not be brought by individuals that
had no direct or independent knowledge of the information, or those
who were not an original source to the entity that disclosed the
fraud."  *Cooper*, 19 F.3d at 568 n.10.

Knowledge is "direct" if it is firsthand, "marked by absence of
an intervening agency, instrumentality, or influence."  *Ondis*, 587

18

F.3d at 59 (internal quotation marks omitted); *accord Fried*, 527 F.3d at 442." Thus, where a relator's knowledge is based on his own private investigation of nonpublic information, his knowledge is "direct." *Cooper*, 19 F.3d at 568. In contrast, knowledge is not "direct" if it is based on research into public records or a review of publicly disclosed materials. *Ondis*, 587 F.3d at 59. Knowledge is "independent" if it does not depend or rely on public disclosures. *Id.*; *Fried*, 527 F.3d at 442-43; *Cooper*, 19 F.3d 568 n.12. "A relator who would not have learned of the information absent public disclosure does not have 'independent' information within the statutory definition of original source." *Mistick*, 186 F.3d at 389 (internal quotation marks omitted). In summary, a relator's knowledge is not "direct and independent" if it is based on publicly disclosed documents. *E.g., McElmurray*, 501 F.3d at 1254 (finding that relators were not original sources of information they acquired in private litigation); *Battle*, 468 F.3d at 763 (holding that plaintiff was not original source of information she obtained from state audits). Second-hand information is not converted to "direct and independent knowledge" "simply because the plaintiff discovered through investigation or experience what the public already knew." *Reagan*, 384 F.3d at 179.

Here, Relators do not have "direct and independent knowledge" of the representations made in the grant application; they are aware of

the contents of the grant application only because they received a copy of the application in response to their FOIA and/or GORA requests. Likewise, Relators also do not have "direct and independent knowledge" of the correspondence between the Defendants regarding the EPA application; they are aware of the correspondence because they received a copy of it in response to their FOIA and/or GORA requests or through discovery in prior litigation. The Court notes that, given the background of this case, Relators were skeptical of Defendants' motives, and when they learned that an EPA grant was a source of funding for the UGA Defendants' research, Relators suspected that they might find problems with the grant application if they could get a copy of it. However, this type of speculation does not qualify as direct and independent knowledge within the meaning of the FCA. *Cf. Rockwell*, 549 U.S. at 475-76 (holding that relator's failed prediction regarding the defendant's waste disposal method did not qualify as direct and independent knowledge of a waste disposal problem that was allegedly misrepresented to the government). Moreover, the fact that Relators had background knowledge that "enabled them to understand the significance of the information they acquired" in other litigation and via FOIA and GORA requests "does not mean that they had knowledge independent of the publicly disclosed information as to the [representations] alleged to be false." *McElmurray*, 501 F.3d at

1254; *accord Reagan*, 384 F.3d at 179 (noting that "the investigation or experience of the relator either must translate into some additional compelling fact, or must demonstrate a new and undisclosed relationship between disclosed facts, that puts a government agency 'on the trail' of fraud, where that fraud might otherwise go unnoticed").

Relators nonetheless contend that they should be considered an original source of the information supporting their claims because they "are the origin of all actions that have taken place in this lawsuit" since, "[b]ut for the filing of the lawsuits against Augusta in 1998, the study at issue in this lawsuit never would have been performed," and "[t]here would be no grant application, but for the actions of the Relators." Relators' Resp. to EPA Defs.' Mot. for Summ. J. 20, ECF No. 170. Simply providing the motivation for the production of a publicly disclosed document is not sufficient to establish that Relators are an original source of the publicly disclosed information on which their claims are based—the grant application and the correspondence between Defendants. The Eleventh Circuit previously observed that Relators "are probably an original source with respect to the damage allegedly caused to their cattle by Augusta." *McElmurray*, 501 F.3d at 1251 n.17. However, just as Relators were not an original source "with respect to the false certifications of Augusta" in the loan documents at issue in

*McElmurray*, *id.*, they are not an original source with respect to the alleged misrepresentations in the EPA grant application at issue here. They cannot base jurisdiction over the alleged false claims to the EPA on their knowledge of the damage to their farms caused by the application of sewage sludge. *Id.*

CONCLUSION

For the reasons set forth above, the Court finds that no genuine issues of material fact exist as to whether the information relied on by Relators was "publicly disclosed" information and whether Relators were an "original source" of that information. Since Relators' action relies on publicly disclosed information for which Relators were not an original source, it must be dismissed for lack of subject matter jurisdiction. Accordingly, this action is hereby dismissed, and all other pending motions are rendered moot.


IT IS SO ORDERED, this 8th day of September, 2010.


S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE